## IN RE: ESTATE OF FRIEDMAN, Case No. 87-1795
## WOLF v FRIEDMAN, et al., Adversary Case No. 88-4931

Eleventh Judicial Circuit, Dade County

July 3, 1989

### APPEARANCES OF COUNSEL

**Clay Craig,** Steel Hector & Davis, for Personal Representatives of the Estate of Jacob L. Friedman

**Donald M. Klein,** for petitioner.

### OPINION OF THE COURT

EDMUND W. NEWBOLD, Circuit Judge.

#### *ORDER OF PARTIAL SUMMARY JUDGMENT*

THIS CAUSE having come before the Court upon the personal representatives' motion for partial summary judgment, and the Court having reviewed the motion and response, reviewed the depositions and affidavits submitted by the personal representatives, and having heard arguments of counsel, grants the personal representatives' motion for partial summary judgment as follows:

### FINDINGS OF FACT

1. Jacob L. Friedman died on March 1, 1987.

148

2. Arthur Lipson, Morton Zemel, and Ann Friedman were appointed personal representatives of the estate of Jacob L. Friedman on March 27, 1987.

3. Jacob L. Friedman, at the time of his death, had a probate estate in the approximate amount of $3,652,929.00, and a taxable estate in the approximate amount of $5,345,631.00.

4. Included in this estate was stock in Penn Central Corporation with a date of death value of $1,151,625, which was distributed to Ann U. Friedman on May 10, 1989, with a date of distribution value of $1,138,273.75. During the administration of the estate, this holding produced income and dividends payable to the estate in the total amount of $23,757.50.

5. After the death of Jacob L. Friedman, the personal representatives retained Shearson Lehman Hutton, Inc. for brokerage services and investment advice, pursuant to Section 733.612(19), Florida Statutes (1989). Shearson Lehman Hutton did not, at any time, advise the personal representatives to sell the estate's holdings in Penn Central Corporation.

6. The Last Will and Testament of Jacob L. Friedman provides that Barbara Wolf shall be one of three trustees of the residuary trust established by Article V, and shall receive income from the trust in the fixed amount of $75,000 per year. The Trustees may distribute principal to Barbara Wolf, in their "absolute discretion," if "necessary or desirable for her proper welfare, maintenance, and support or for other emergency type situations." Before making such a distribution, the trustees are directed to consider the income received by Barbara Wolf from the trust, "as well as all her other sources of income." The effect of the Last Will and Testament of Jacob L. Friedman is that gains, losses or income during administration of the estate inure to the benefit or detriment of the residuary trust.

7. On August 28, 1987, Donald M. Klein, representing Barbara Wolf as one of three trustees and as limited income beneficiary, wrote a letter to counsel for the personal representatives stating that "it is the opinion of my client that many of the [securities] are extremely speculative in nature . . . and should probably be liquidated and the proceeds reinvested in government securities . . ."

8. Although this letter was not a direction to sell securities and was received from only one of the three trustees of the residuary trust (not constituting a majority, therefore not the "beneficiary" of the estate pursuant to Sections 731.201(2) and 737.404(1), Florida Statutes

149

(1989)), and whose interest in the residuary trust was limited as set forth above, the personal representatives again requested that Shearson Lehman Hutton advise them regarding the estate's securities portfolio on October 8, 1987.

9. Shearson Lehman Hutton did advise that three issues be sold or redeemed and the estate's holdings in Chi-Chi's, Inc., Matterhorn Commodities Partners, and Pantry Pride, Inc. were sold or redeemed pursuant to this advice during administration for a net capital gain of $10,304.00.

10. On September 13, 1988, Barbara Wolf filed her amended petition for removal and surcharge of co-personal representatives, alleging that retention by the estate of stock, including stock in Penn Central Corporation, constituted a "gross abuse of fiduciary responsibility." (Paragraph 3A, Amended Petition for Removal and Surcharge.)

11. To date, the personal representatives have never been advised by Shearson Lehman Hutton, Inc. to sell any further securities held by the estate, including stock in Penn Central Corporation.

12. The total stock and bond portfolio distributed to Ann Friedman on May 10, 1989, had a date of death value of $1,675,308.00, and a date of distribution value of $1,676.088.55.

13. Article XI of the Last Will and Testament of Jacob Friedman provides:

[I] give to my Personal Representatives and Trustees the power and authority to do any of the following as *in their unrestricted judgment and discretion* they deem advisable for the better management and preservation of my property, without resort to any person or court for further authority:

*A. Retain Property.* To retain such property as an investment *without regard to the proportion such property or property of a similar character so held may bear to the entire estate held by them.*

. . .

*J. Distribution in Cash or in Kind.* Whenever required or permitted to divide and distribute my estate or any trust created hereunder, to make such division or *distribution in cash or in kind* or party in cash or in kind, and the valuations of assets by my Personal Representatives or Trustees upon making distributions shall, if made in good faith, be final and binding on all beneficiaries.

. . .

*O. Deal with Property as Absolute Owner.* To do all such acts, take

150

all such proceedings and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with relation to such property *as if the absolute owners thereof.*

. . .

*S. Unproductive Property.* Not to dispose of unproductive property as provided in Chapter 738 of the Florida Statutes as it now exists or as it may hereafter be amended, and I further waive compliance with any other law now or hereafter in effect requiring the conversion of any underproductive property into productive property other than by the exercise of the *unrestricted judgment and discretion* that my Personal Representatives and Trustees may exercise.

(Emphasis added.)

## CONCLUSIONS OF LAW

The Court finds that there are no material issues of fact and law, and the personal representatives are entitled to partial summary judgment upon the following grounds:

### I.

The ordinary standard for investments made by personal representatives is set forth in Section 737.302, Florida Statutes. This standard ("that [which] would be observed by a prudent trustee dealing with the property of another"), and its application to various factual circumstances, has produced an enormous body of Florida case law, and has come to be known as the "prudent trustee" rule.

However, the Florida Probate Code has, in Section 733.612(1), eliminated this standard (and therefore any cases decided by application of this standard) with regard to *retention* (as opposed to purchase) of assets forming an original part of the probate estate, by authorizing personal representatives to retain assets received from the decedent, even though such assets are "improper for trust investments." *(Id.).* In *Barnett v Barnett,* 424 So.2d 896 (Fla. 1st DCA 1982), a trustee retained stock in Barnett Bank which, during the contested period of retention, dropped from $48 per share to $22 per share. In holding that the trustee had not breached his fiduciary duty, the First District stated that the plaintiff "would have us reverse and hold [the trustee] liable for not knowing when to sell high. This we cannot do . . ." *(Id.* at 898) This Court notes that the trustee in *Barnett, supra,* who was not found to have breached his fiduciary duty by retention of stock, did not have the protection granted the personal representatives in the instant action by § 733.612(1), which specifically authorizes retention of assets

which would be "improper for trust investments." Although *Barnett* is illustrative, this section of the Florida Probate Code removes the instant case from the body of case law dealing with the "prudent man" or "prudent trustee" rules, and, instead, requires that only that the personal representatives act "reasonably for the benefit of interested persons."

In addition, Section 733.612(19) states specifically the personal representatives may properly act upon the recommendations of investment advisors without independent investigation. The undisputed evidence is that the personal representatives relied upon the advice of Shearson Lehman Hutton with regard to investments and retention of assets by the estate during administration. At no time during the administration of the estate did Shearson Lehman Hutton, Inc. advise the personal representatives to sell the stock in Penn Central Corporation and, pursuant to this advice and the independent judgment of the personal representatives, the stock in Penn Central Corporation was not sold, but was retained and distributed in kind. (As authorized by Article XI(A) and (J) of the decedent's Will, as discussed *infra.*)

In *Wohl v Lewy,* 505 So.2d 525 (Fla. 3d DCA 1987), the personal representatives, following the advice of their accountant, took a marital deduction which was ultimately disallowed by the Internal Revenue Service. The beneficiaries objected to the accounting, and argued that the personal representatives should be surcharged to the extent that this decision resulted in additional fees, taxes, and penalties. The trial court sustained the objections; however, the Third District Court of Appeal, citing Section 733.612 relating to employment of professionals by the personal representative, reversed. The Court stated that personal representatives may act upon the advice of professionals without independent investigation and that "[t]his is exactly what the personal representatives did." *(Id.* at 526.) Indeed, even applying the struct "prudent trustee" standard (not applicable here), the Court found "no indication that the personal representatives did not act reasonably and prudently in employing and taking the advice of the accountant." *(Id.)*

The Third District Court of Appeal has, therefore, held that, even absent the statutory protections granted to the personal representatives in Section 733.612(1), reasonable reliance upon a professional's advice is, alone, sufficient to protect the personal representatives from an action for surcharge. Exactly as in *Wohl, supra,* this Court finds "no indication that the personal representatives did not act reasonably and prudently in employing and taking the advice" of Shearson Lehman Hutton, Inc. that the stock in Penn Central Corporation be retained. For this reason, the Court holds that there are no remaining issue of

152

law or fact with regard to application of the above-cited sections of the Florida Probate Code to the facts of this case, and the personal representatives are entitled to entry of partial summary judgment in their favor based upon the above provisions of the Florida Probate Code.

## II.

Even without the protections granted the personal representatives by the Florida Probate Code, as set forth above, the terms of the decedent's Will specifically authorize retention of assets such as those which form the basis of Barbara Wolf's petition for surcharge.

It is the law of Florida that the testator's intention as to all matters, including both dispositive provisions and powers of fiduciaries, is to be governed by the testator's intent as gleaned from his will. It is clear from a reading of his Will that Jacob L. Friedman wished his personal representatives (and trustees), whom he selected, to have extremely broad discretion, particularly with regard to retention of original estate assets. In this regard, the personal representatives are specifically authorized in Article XI to retain investments "without regard to the proportion such property or property of a similar character so held may bear to the entire estate held by them." Thus, Barbara Wolf's suggestion, contained in her counsel's letter of August 28, 1987, that Penn Central should be liquidated because it was "roughly one-third (⅓) of the entire estate" is specifically negated by the terms of the decedent's Will, containing his instructions to his fiduciaries.

In like fashion, Barbara Wolf's allegations (contained in the Amended Petition for Surcharge and the Objections to Interim Accounting) that the personal representatives have abused their discretion by failure to sell the estate's stocks (and invest in assets which may produce a higher level of income) must fail. Article XI(S) of Mr. Friedman's Will specifically addresses the production of income by estate assets during administration, and waives compliance with any law "requiring the conversion of any underproductive property into productive property other than by the exercise of the unrestricted judgment and discretion that my personal representatives and trustees may exercise." It is, therefore, not even necessary to "glean" the testator's intent from his Will - he has stated in plain English the degree of discretion conferred upon his personal representatives.

Thus, completely aside from the statutory protection discussed above, the personal representatives may not be surcharged for their retention of original assets of the estate, based upon income production during administration. This Court may not ignore the clear terms of

**153**

the decedent's Will. In this regard, the Court notes that the undisputed facts show that the estate's stock portfolio did not incur any capital losses during administration of the estate. Accordingly, Mrs. Wolf's allegations apply only to production of income during administration, which was specifically addressed by the decedent in his Will.

Additionally, Mrs. Wolf has alleged that, because one of the three personal representatives was the attorney who drafted the Will, Florida's public policy precludes application of the above provisions of Jacob L. Friedman's Will to the personal representatives' decision to retain stock in the estate during administration. In support of this allegation, Mrs. Wolf cites the case of *Florida Bar v Nemec*, 390 So.2d 1190 (Fla. 1980). The Court finds that this decision, which concerns public reprimand of an attorney who advised his clients to release him from his own admitted malpractice, is not relevant to the instant facts. No other cases were cited by Mrs. Wolf to support her position, and the Court finds no "public policy" which requires the Court to disregard the clear terms of the decedent's Will simply because one of the three co-personal representatives was the attorney who drafted the Will.

Additionally, Mrs. Wolf urges this Court to apply a "higher standard of care" to the actions of two of the three personal representatives (a certified public accountant, and an attorney, respectively). Mrs. Wolf cites no case authority for this proposition, and the Court does not believe that the personal representatives should be held to a higher standard with regard to investment decisions simply because they have professional qualifications in other fields.

### III.

As set forth in the statement of facts above, on August 28, 1987, counsel for Barbara Wolf wrote a letter to counsel for the personal representatives, stating that it was Barbara Wolf's "opinion" that the estate's securities received from the decedent were "extremely speculative" and "should probably be liquidated and the proceeds re-invested in government securities." Pursuant to Florida Statutes Section 731.201(2), Barbara Wolf is not a "beneficiary" of the estate of Jacob L. Friedman. To the contrary, the residuary trust is the beneficiary of the estate, and the residuary trust may act only through its trustees, or a majority thereof, pursuant to Section 737.404(1), Florida Statutes. In addition, Barbara Wolf's beneficial interest in the trust is limited to a fixed income amount, with limited discretion in the trustees regarding distribution of principal. Although Barbara Wolf is an "interested person" for purposes of standing in this action, no evidence has been

submitted of any authority granted Barbara Wolf to speak on behalf of the other trustees of the residuary trust or the remaindermen of the trust, the grandchildren of Jacob L. Friedman. Indeed, had the personal representatives agreed with Barbara Wolf's "opinion," sold the estate's securities (against the advice of Shearson Lehman Hutton, retained to give investment advice to the personal representatives) and lost the opportunity to participate in potential increases in the value of the securities after the date of sale, the other two trustees of the residuary trust would not have been estopped by seeking surcharge against the personal representatives for imprudently disposing of estate assets.

As set forth above, the discretion granted the personal representatives by the Florida Probate Code, and by the decedent in his Will, eliminates application of the "prudent trustee" rule to retention, and specifically authorizes retention of securities forming an original part of the estate. Because the personal representatives are protected from liability for surcharge under these standards, correspondence from counsel for Barbara Wolf stating her "opinion" regarding estate investments is simply not relevant to the personal representatives' performance of their duties.

## IV

It is a basic tenet of Florida law that the personal representatives of an estate are not insurers of the estate's assets. *Wohl, supra; In Re Estate of Rosenthal,* 189 So.2d 507 (Fla. 3d DCA 1966). *See also Stark v United States Trust Company of New York,* 445 F. Supp. 670 (S.D.N.Y. 1978), for an extended discussion of this issue.

It is, of course, very simple, with benefit of hindsight, to determine investments which should have been made. However, fiduciary performance is not measured according to results. As frequently stated by courts considering this question, all that is required of fiduciaries is that they perform their duties reasonably in accordance with the law. (Trustee "not liable for the drop in stock value or the mistake in business judgment which caused a loss of interest," *Barnett, supra* at 898; "A personal representative is not an insurer of an estate's assets," *Wohl, supra* at 526, *Rosenthal, supra* at 508.) As stated by the United States District Court in *Starke, supra,* "[n]either prophecy nor prescience is expected of trustees and their performance must be judged not by hindsight but by facts which existed at the time of the occurrence." *(Id.* at 678-9.) By this standard, it is clear that no surcharge can be supported, and the personal representatives are entitled to entry of a summary judgment.

155

Finally, it should be noted that, despite the allegations contained in the Amended Petition for Surcharge, *no capital losses were suffered* because of the estate's retention of assets. Indeed, the stocks and bonds retained by the estate showed a small gain during administration. Accordingly, Barbara Wolf's allegations regarding losses are simply factually incorrect. The allegation regarding "underproductivity" of the estate assets has been discussed *infra.*

## JUDGMENT

This Court finds that it is undisputed that the personal representatives acted in accordance with the provisions of Section 733.612(1) and (19), Florida Statutes, in connection with their retention of assets during administration of the estate. There being no indication that the personal representatives acted other than "reasonably for the benefit of interested persons" in retaining and relying upon the advice of Shearson Lehman Hutton, Inc., summary judgment in favor of the personal representatives is appropriate. As an additional independent ground, this Court finds that the degree of discretion granted the personal representatives by the decedent in his Will is stated in clear terms, and the Court finds that there is no material issue of law or fact that the language of the decedent's Will authorizes that retention of assets which may be considered underproductive, such as the stock which formed an original part of the estate of Jacob L. Friedman. Finally, the Court finds that the letter to the personal representatives from counsel for Mrs. Wolf does not alter the degree of discretion granted the personal representatives by the Florida Probate Code and Jacob L. Friedman's Will. This letter states only Mrs. Wolf's "opinion" regarding the estate's investments, and this Court believes (but does not specifically find) that, had the personal representatives disobeyed the specific advice of Shearson Lehman Hutton to retain the stock in Penn Central Corporation, and sold the stock based upon Mrs. Wolf's "opinion", they may have subjected themselves to liability for unreasonable favor to follow the specific advice given them by Shearson Lehman Hutton, Inc. ACCORDINGLY, the motion for partial summary judgment as to Paragraph 3(A) of the Amended Petition for Surcharge and Removal, and Paragraph 5 of the Petitioner's Objections to Interim Accounting, is GRANTED.

DONE AND ORDERED in Chambers, this 3rd day of July, 1989.